RECEIVED BY MAIL
NOV 25 2024
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

J. Bryan Quesenberry
2750 SW Coast Avenue
Lincoln City, OR 97367
801-473-9951
jbq.esq@gmail.com
*Plaintiff/Relator*

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. J. BRYAN QUESENBERRY,<br><br>Plaintiff,<br><br>vs.<br><br>BDLR GROUP INC.; EMILL DENNIS; GIEZWA PIERRE HOBBS, JR., a/k/a GIEZWA PIERRE; and HD CONSULTING, LLC,<br><br>Defendants. | **COMPLAINT FOR VIOLATION OF FEDERAL FALSE CLAIMS ACT**<br><br>**(Filed in camera and under seal)**<br>**(DO NOT PLACE ON PACER)**<br><br>JURY TRIAL DEMANDED<br><br>Civil Action No. 24-sc-4267 SRN/SGE |

Plaintiff-Relator J. Bryan Quesenberry, a licensed attorney acting *pro se* on behalf of the United States of America (the **"Government"** or the **"Federal Government"**) and against Defendants, alleges, based upon personal knowledge, relevant documents, information, and belief, as follows.

## INTRODUCTION AND HISTORY OF THE FALSE CLAIMS ACT

1. This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendants and/or their agents and employees, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq*. **("FCA")**.

SCANNED
NOV 25 2024
U.S. DISTRICT COURT MPLS

2. This action seeks to recover hundreds of thousands of federal dollars wrongfully loaned to the Defendants through the Federal Government's Payroll Protection Program **("PPP")**. The PPP provides a pathway to borrowers to receive forgiveness of these loans.

3. Pursuant to the PPP, the Federal Government spent hundreds of billions of dollars in stimulus funding, as well as other federal funding, to support and aid legitimate businesses through the coronavirus pandemic.

4. The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tool for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

5. The FCA prohibits, *inter alia*: (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Anyone who violates the FCA is liable for a civil penalty for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

6. In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer,

employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest…" 31 U.S.C. § 3729(b)(2).

7. The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendants during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

8. Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendants' misconduct has extended.

## PARTIES

9. Plaintiff/Relator J. Bryan Quesenberry **("Relator")** is a resident of Oregon. He is an attorney licensed to practice law in Oregon and brings this action on behalf of the United States of America, the real party in interest.

### BDLR Group Inc.

10. Defendant BDLR Group Inc. **("BDLR Group")** is a Minnesota entity located at 7601 France Avenue South, Suite 600, Edina, MN 55435-5971. It was formed February 19, 2002, with a principal place of business in Hennepin County, Minnesota.

11. BDLR Group applied and was approved for a PPP loan of $1,250,000 on April 28, 2020 (loan number 9947517205), from the originating lender Village Bank. This loan was forgiven on January 20, 2021, in the amount of $1,258,630.14.

12. A general Google search of BDLR Group's name yielded few hits (with many of them from PPP databases). This is suspicious for a company that reported having 138 employees.

13. According to Mergent Intellect, a subscription-only business and financial information platform owned by Dun & Bradstreet, BDLR Group had a total of only two employees in 2020 and 2021, a far cry from the 138 employees represented by BDLR Group on its PPP loan application. *See*, printout attached as **Exhibit A**.

14. Further suggesting BDLR is not what it represented on its PPP loan application, BDLR Group appears to be the copyright holder of a website with the URL www.bdlrgroup.com, but the one-page site, which bears the nameplate "DeLaRosa Consultancy," is incomplete and apparently has not been updated since 2021. It contains no content specific to BDLR Group, such as "contact" or "about" information, and reports "404 errors" for each of its four navigation buttons.

15. Further, BDLR Group's apparent chief executive officer, Bernard DeLaRosa, was the managing director of Skipping Stone Wealth, whose website identifies it as "a private wealth advisory practice of Ameriprise Financial Services, LLC." https://www.ameripriseadvisors.com/team/skipping-stone-wealth/team-profile/ DeLaRosa's LinkedIn page (https://www.linkedin.com/in/berniedelarosa/) makes no mention of his supposed affiliation with BDLR Group. DeLaRosa apparently died in December 2023.

16. Upon information and belief, BDLR Group unlawfully inflated or fabricated its employee count in order to obtain a larger PPP loan.

**Emill Dennis**

17. Defendant Emill Dennis **("Dennis")** is an individual residing at 2150 Wilson Avenue, Apt. 222, Saint Paul, MN 55119-4054. Upon information and belief, Dennis's full name is Emill Ramon Dennis.

18. Dennis applied and was approved for a PPP loan of $176,120 on March 23, 2021 (loan number 6566528610), from the originating lender Cross River Bank. Upon information and

belief, Emill received said PPP loan. It is unclear from the most recent publicly available SBA dataset of PPP loans whether this loan has been forgiven.

19. The SBA dataset indicates that Dennis is a limited liability company, but the Minnesota Secretary of State's business-filings website lists no entity or assumed/fictitious business name with the name (or related to the name) Emill Dennis.

20. On his PPP loan application, Dennis reported having 15 employees, a number that is highly suspect in light of his principal place of business being 2150 Wilson Avenue, Apt. 222, Saint Paul, MN 55119-4054—a location that public records suggest is a 777-square-foot, one-bedroom apartment in a 225-unit residential apartment building.

21. Upon information and belief, Emill arranged to borrow the PPP funds while having no viable business employing 15 persons.

22. After receiving the PPP funds, Dennis started a new business on April 5, 2021 (according to the Minnesota Secretary of State website), Emill's Car Detailing, which has the following website: https://emillscardetailing.weebly.com/.

23. After receiving the PPP funds in 2021, Dennis, upon information and belief, traveled on apparent vacations to Hawaii and to Saint Lucia, an island country off the West Indies in the eastern Caribbean, and subsequently took another vacation that included a stay at an all-inclusive resort in Antalya, Turkey, as well as stops in Istanbul, Turkey, and Paris, France. *See*, https://www.facebook.com/emill.dennis

**Giezwa Pierre Hobbs, Jr., a/k/a Giezwa Pierre**

24. Defendant Giezwa Pierre Hobbs, Jr., a/k/a Giezwa Pierre **("Hobbs")**, is an individual residing in New Hope, MN. The SBA dataset identifies him as a sole proprietor.

25. The Minnesota Secretary of State's business-filings website lists "Giezwa Pierre" as an assumed name owned by the nameholder Giezwa P. Hobbs, Jr. This assumed name was

filed with the Secretary of State on September 11, 2020—well after the February 15, 2020, deadline by which the borrower had to be in operation in order to be eligible for a PPP loan. This assumed name expired on January 27, 2023. The Minneapolis address on the Secretary of State's website associated with the assumed name "Giezwa Pierre"—1369 Spruce Place, Apt. 2801—is the same address used by the nameholder Giezwa P. Hobbs, Jr.

26. Using the name Giezwa Pierre Hobbs, Hobbs applied and was approved for a first-draw PPP loan of $25,809 on May 1, 2020 (loan number 7380877708), from the originating lender U.S. Bank. It is unclear from the SBA dataset of PPP loans whether this loan has been forgiven. The address associated with this first-draw PPP loan is 8400 Bass Road, New Hope, MN 55428. Despite identifying himself as a sole proprietor, Hobbs claimed on this PPP loan application to have had a total of ***15 employees***.

27. Hobbs applied and was approved for a second-draw PPP loan of $176,375 on March 28, 2021 (loan number 2202728710), from the originating lender Bank of America. It is unclear from the SBA dataset of PPP loans whether this loan has been forgiven. The address Hobbs used for this loan is 1369 Spruce Place, Apt. 2801, Minneapolis, MN 55403-2796. Hobbs again claimed on this PPP loan application to again have had a total of ***15 employees***, despite his principal place of businesses being an apartment and his loan amount increasing 700 percent.

28. The Minnesota Secretary of State's business-filings website lists six entities containing the name Giezwa Pierre, all located at Hobbs's address at 1369 Spruce Place, Apt. 2801, in Minneapolis. It is unclear whether Hobbs intended for one of these six entities to borrow and use the PPP funds detailed above.

29. A Google search identified a highly negative review of Giezwa Pierre Enterprises (one of the six entities associated with Pierre and located at the borrower's address) on the Ripoff Report website posted on October 7, 2020. The reviewer alleged that Giezwa Pierre Enterprises

is a "nonexistent company" and "a scam."[1] Giezwa Pierre Enterprises' website improbably describes itself as having grown "FROM A SMALL STARTUP TO A BILLION-DOLLAR BUSINESS." This website claims that Giezwa Pierre Enterprises started in 2016, but the Minnesota Secretary of State indicates that it was formed April 20, 2021—nearly a month after Pierre applied for the PPP loan described above.

30. Giezwa Pierre's Facebook page contains numerous posts regarding the establishment of "The United Monarchy of Giezwa," led by "King Giezwa Monarch Jr." The posts can be viewed at the https://www.facebook.com/GiezwaPierre/.

31. Styling himself "the ultimate ruler and authority of UMG," Hobbs writes in one post that UMG will be "an independent, sovereign entity" that will "provide universal healthcare to [its] citizens through a network of state-owned hospitals and clinics" and introduce "Mondo currency" as part of UMG's "own monetary system."

**HD Consulting LLC**

32. Defendant HD Consulting, LLC **("HD Consulting")**, is a Minnesota entity located at 2255 Abingdon Way, Orono, MN 55356.

33. HD Consulting applied and was approved for a PPP loan of $208,332 on May 1, 2020 (loan number 7510517704), from the originating lender U.S. Bank. Upon information and belief, HD Consulting received said PPP loan.

34. HD Consulting indicated on its PPP loan application that it had only one employee, yet it received more than $200,000 in PPP funds. (The sole-proprietor PPP loan limit was $20,833.)

---

[1] https://www.ripoffreport.com/report/giezwa-pierre-enterprises/mn-minneapolis-fashions-fake-1500683

35. HD Consulting has no website, social media, or other internet presence by which to advertise or market its services.

36. HD Consulting's business address (2255 Abingdon Way in Orono) is a single-family residence.

37. HD Consulting's principal (according to the Minnesota Secretary of State) is Frederick Stinchfield, whose LinkedIn page makes no mention of him operating a business named HD Consulting.

38. HD Consulting was administratively terminated by the Minnesota Secretary of State's office on February 18, 2021.

## JURISDICTION AND VENUE

39. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, to Relator's knowledge there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are used in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.

40. Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Relator researched and discovered the pertinent entity information and individual information of each Defendant.

41. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants' principal places of business are located in the District of Minnesota as alleged above.

42. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendants' principal place of business is in the District of Minnesota, and because violations of 31 U.S.C. §§ 3729 *et seq*. alleged herein occurred within this district.

## THE PAYCHECK PROTECTION PROGRAM

43. Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act **("CARES Act")**. Section 1102 contained a new program called the Paycheck Protection Program **("PPP")** and was part of the U.S. Small Business Administration's **("SBA")** 7(a) Loan Program. These two sections were intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by then-President Trump on March 13, 2020.

44. Due to the COVID-19 emergency, many small businesses nationwide were experiencing economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus.

45. The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

46. Section 1102 of the Act temporarily permitted SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

47. The CARES Act was intended to provide relief to America's small businesses expeditiously.

48. The CARES Act gave lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to

determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders were held harmless for borrowers' failures to comply with PPP rules.

49. Defendants submitted documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

50. In general, Defendants calculated an amount to borrow by aggregating payroll costs from the previous 12 months for employees whose principal place of residence was the United States. Annual employee salaries were capped at $100,000. Defendants then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

51. On the PPP application, a representative of each Defendant had to certify in good faith to a number of representations to the Federal Government. The second bullet point under the CERTIFICATIONS AND AUTHORIZATIONS section on the PPP loan application states:

> ***The Applicant is eligible to receive a loan*** under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule). [Emphasis added].

52. Another certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

53. Each Defendant also "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

54. Finally, each Defendant certified that it "underst[ood] that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not

more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

## ALLEGATIONS

### Inflated/Incorrect Employee Count

55. On the first page of the PPP application, all borrowers were required to list the number of their employees. Borrowers had to each certify that, "The Applicant was in operation on February 15, 2020 *and had employees* for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC." (Emphasis added).

56. All PPP borrowers also further certified on their PPP loan applications, "*The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll* as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan." (Emphasis added).

57. As alleged above, Defendants BDLR Group, Emill Dennis, and Hobbs fraudulently inflated their employee count in order to increase the amount of their PPP loans.

58. In the case of HD Consulting, it misrepresented the amount its one employee earned or improperly requested and obtained funds on behalf of just one employee.

### General Fraud

59. As alleged above, Defendants BDLR Group, Emill Dennis, Hobbs, and HD Consulting represented that they were going concerns when all indications show they were either shell entities, bogus entities, dissolved or expired entities, or otherwise not going concerns.

60. For example, said Defendants lacked an internet or business presence despite purporting to employ dozens of people.

61. Said Defendants lacked legitimate business locations.

62. Said Defendants were also dissolved when they applied for PPP loans or were not registered to do business in Minnesota at the time of their PPP loan applications.

63. As further alleged above, the general circumstances surrounding the businesses represented by these Defendants on their PPP applications strain credulity.

**FALSE CLAIMS ACT**

**Violation of 31 U.S.C. § 3729(a)(1)(A)-(B)**

64. Relator realleges and incorporates by reference the allegations contained in the foregoing paragraphs as though fully set forth herein.

65. This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

66. By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government, or authorized agent of the United States Government, for payment or approval.

67. By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

68. Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented to third party lending institutions. Relator does not have access to the records of all such false or fraudulent statements or claims.

69. Lenders, acting on behalf of the Federal Government, were guaranteed 100% of the PPP loans from the Federal Government. Said lenders were unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants. Said lenders paid the claims that would not be paid but for Defendants' illegal conduct.

70. By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

71. Additionally, the United States is entitled to a maximum penalty for each and every violation arising from Defendants' unlawful conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against each Defendant as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages the United Sates has sustained because of each Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729;
2. That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);
3. That Relator be awarded all costs of this action, including attorney's fees and expenses; and
4. That Relator recover such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: 11/14/2024

Respectfully submitted,

J. Bryan Quesenberry
Plaintiff/Relator